May it please the court, Denise Young on behalf of Mr. Hurles. This case is about private communications between the judge who at that time in Arizona alone decided whether Mr. Hurles would live or die once he was convicted of a capital murder and the AG who represented the judge in special action proceedings that were initiated by trial counsel in order to get sufficient funds to responsibly represent Mr. Hurles in his capital trial. The content of the communications between, we know communications occur between the Attorney General who was representing the judge in the special action and the trial judge, but the content of those communications remain unknown despite repeated efforts to discover them. What will make a difference, this was my question in reading your brief, what will make a difference in in the communications for your claim that the state courts denial of the new of the due process claim was an unreasonable application of Supreme Court precedent? We we don't we because we've not been provided discovery or a hearing we don't yet know what is what the substance of those communications are but we do know that the Attorney General in representing the judge in those Mr. Hurles and the crime and we know that those statements are adopted by the judge so at the outset of the proceedings it there certainly appears to be a the appearance at least of bias. Well the district court says the document said the crime was brutal but then but but that doesn't say that Mr. Hurles was was guilty but I'm my question really goes to what facts are you alleging because that's our standard what facts are you alleging which would then entitle you to relief? What we are alleging is that if we could discover and if we could first have the opportunity for either interrogatories or some other discovery and a hearing we can discover what the communications were between the judge and the Attorney General about Mr. Hurles we believe the prejudice could be shown as to his sentence. And then so what are you alleging what are you alleging is in those communications that would entitle you to relief or are we talking just about we don't know but we just want to take a look and then we'll We are alleging first of all the conflict there there is a conflict between both what Attorney General French had to say about those communications and what the judge had to say about those communications the but that doesn't entitle you to really just the fact that there's there might be a difference what entitles you to relief what are you alleging that would entitle you to relief? That his capital sentencing proceedings were unfair. And what facts made it unfair? And that's what that's why you don't know we don't know because we haven't been provided the discovery your honor that's why we desperately need the opportunity and we have been requesting it for a long time to discover those communications. Do you need the discovery? Is it your view we need to find the state court judge was personally involved in order to give you relief? Well you're... Why should we attribute these statements in the brief to Judge Hilliard she stated she had no involvement in the special action so why should we consider those statements as her? Is there anything else here that would entitle you to relief? Well yes your honor she said she had no interaction in those proceedings yet that is rebutted by the Attorney General's statement or at least contradicted not rebutted contradicted by the Attorney General's statements in which she said I had communications with the judge about this. So let me ask you if it were true and she had communications what difference would that make how would that entail you to relief? How would that make the state courts determination an unreasonable application of Supreme Court precedent? Because because he was entitled to a fair sentencing proceeding well no doubt it over by a fair fact what what's what Supreme Court decision are you pointing to that the state court couldn't reasonably apply? Well we are pointing to both well excuse me Wellens versus Hall and Jefferson versus Upton. That was the chocolate genitalia case? How is that like this case? That's not even a Supreme Court case is it? Yes it is a Supreme Court case. How this is is like this case is that there too there and again in that case they did not know just like here we don't know exactly what happened and in Wellens the court was very specific to say there the procedure to find out what exactly what happened has not yet been provided but it should be provided. But you're not alleging any contact between the judge and the jury right? That was the fact pattern in Wellens. No. Our case in Murdoch says if you can make a principle distinction between the Supreme Court case and the case the state was reviewing then we can't say that it was an unreasonable application of Supreme Court precedent. But here Your Honor it's not it's not the jury that was the fact finder so here it is very much like Wellens. We the misconduct occurred between the fact finder here the judge. But not the prosecutor right because the prosecutor was the county prosecutor the attorney general wasn't the prosecutor in Hurl's case was he? She did prosecute yes she prosecuted both in the special action she prosecuted. But not in the trial right? Not in the trial or sentencing? Not in the trial but. Or sentencing? That's right Your Honor not in the sentencing. So the attorney general was actually not part of the not at trial but she was before trial and she was after trial. She participated in the direct appeal and she participated in the first state post conviction proceedings. She only withdrew from participation when the motion to recuse her was filed. And again the fact finder here just like the fact finder in Wellens was the jury and there were communications apparently between the jury and the judge. The fact finder here was the judge and we know there were communications here between the unknown communications. But not between the judge and the prosecutor because obviously on appeal the judge was not making those decisions that was appealed to the state Supreme Court. So the judge had no contact with the attorney general in the appeal or nothing that made any difference in the appeal. So we're really only talking at trial at the attorney general was out of the picture. We don't know that Your Honor because we've never been given the opportunity to discover. Are you saying the prosecutor was the attorney general and not the county prosecutor? I thought in the cases it indicated it was the county prosecutor. No Your Honor I'm sorry if I'm being unclear. I'm not saying that it was the attorney general who prosecuted the trial. What I'm saying is we don't know when the communications between the judge and the attorney general occurred. How many there were or the dates of them. So it may well be that there were communications between the judge and the attorney general during the trial. What difference does it make if the attorney general is not prosecuting? I guess I'm still trying to get to what are you alleging that would entitle you to relief? We're alleging that the sentencing process here was defective because there was bias interjected when unknown communications occurred between the sole person in Arizona at that time who decides whether Mr. Hurls lives or dies and the attorney general. The attorney general has admitted, conceded those conversations occurred. The frustration of well how does that prejudice you? It prejudices us because we've not yet had the opportunity to uncover these statements, uncover the substance of these statements. And what would the statement be let's say theoretically between the attorney general and the judge that would entitle you to relief? That's a hard question to answer because we've not yet had that. That's what we're requesting. You're supposed to have a fair and impartial judge, right? Yes. And right from the start when she filed her papers in opposition to his motion she said this was a clear cut case. A simple case. A simple case. It was highly unusual for a judge to make an appeal in the court and argue against a motion made by a defendant. And she certainly expressed her views at that time. I thought quite clearly as to how she felt about this case. And that certainly is not displaying that she's a fair and impartial judge. She talks to the attorney general. She's supposed to be the neutral arbiter. What is she talking to the attorney general about? They did talk about this case. What business has she got to talk to him about? And in a sense the local prosecutor, he's tied in with the attorney general because if the case goes up on appeal, it's the attorney general, I believe. It's going to handle all those appeals. So the attorney general is intimately involved in all this. And then when it comes to the sentencing, there was a balancing that she was supposed to engage in. And I don't, as I look at it, I don't think that you really had the type of balancing that the statute contemplated or the way it appears from the record. So something was rotten in Denmark. That's about it. That's what you're saying. You didn't get a fair trial. That's exactly right. How could you get a fair trial if you've got a judge up there who's already expressed views on the case? That's it, huh? That's right. You don't need 50 pages for that, do you? So if you agree with that, with what Judge Pragerson was just suggesting, that the judge was the party and the special action proceeding shows that there was some contact with the attorney general, let's assume for your sake. I guess then I say, well, why do you need any further evidence? Aren't you just talking about a structural appearance of impropriety or contact that per se, I think what Judge Pragerson is suggesting, per se raises this issue of bias. Is that your argument? Your Honor, what we need more of is just what Judge Pragerson identified so articulately. We need to find out what those communications are. But you can't say why. Now, Judge Pragerson is saying this is just per se improper. Do you disagree with that? I think it's improper based on these facts. Okay, so if you think it's per se improper, then I'm not understanding what additional information you need. It's either improper and the state court erred in saying it was an unreasonable application of Supreme Court precedent. We have to see, is this like Murchison? Is this like Mayberry? Is this like Mississippi v. Johnson? So that the state court was unreasonable. Or we need to say, no, there's some belief of actual bias, in which case, what facts are you alleging of actual bias? So are we talking just a per se rule this was improper to be a party in the special action? Or are you saying, or are you alleging that there's some actual bias? We are alleging presumption of bias. And we believe we will be able to prove actual bias if we were allowed the means to discover the substance of the communications and anything else that occurred. Well, didn't you also indicate, for instance, when the trial lawyer said, I feel incompetent, I need help. Didn't she just say, oh, this is a simple case, you can dispose of it easily by yourself? That's exactly. Indicating that she had made a conclusion about this case. That's exactly right. And that is at the outset, before any proceedings have occurred. Counsel is just simply saying, this is a capital case, I need second counsel, help me. And the response from the judge back is, this is a very simple, straightforward case. And threatens, and another key fact in this case is, then threatens trial counsel of her livelihood and said, if you think you can't handle this, then you ought to think about maybe withdrawing from your contract with this county. Doesn't this go toward showing actual bias? I think it certainly... Without even getting into what communications there were with the Attorney General, and apparently there were, there was some communication. And added to the fact that the state court found that what she did was improper. Yes, yes. It does support actual bias. Remember the facts here. It does. You're absolutely right, Your Honor. It does support actual bias. But at the very least, under Wellens, under Jefferson v. Upton, it supports the potential for bias and provides support and actually requires us to have the opportunity to discover the rest of the facts. So are you saying that the Arizona state court doesn't have the right or the, that there's no standard for a state court to say you're only entitled to one attorney, that the state court has to grant defense counsel as many or the defendant as many attorneys as they request? No, Your Honor. I'm not saying that at all. Then what's the standard for determining whether you, the defendant's entitled to multiple attorneys or only one attorney? Is there a standard set out? Your Honor, I don't know the answer to that. I do know at that time in Arizona, two counsel were regularly appointed, and as defense counsel in this case explained in her request for second counsel, the public defender's office always provided two counsel on every capital case. So it really was something that was expected would happen in this case until the judge intervened in the special action and opposed that request. But you're not aware of what the standard would be for determining that the request should be granted or denied? I'm sorry, I do not know what the standard is. I do know, though, that it was the procedure at that time to appoint two counsel. Because it seems that whenever you would say no, you're not entitled to an additional counsel, it would have to be done on some basis that existing counsel could handle it. So I'm having trouble understanding how that shows bias. Well, here, Your Honor, it was a, well, the denial, are you saying how does the denial of counsel show bias? Right, because it would always have to be based on the district court, the state court's determination that additional counsel was not necessary for that particular case. And I don't know that it necessarily, it's not that the denial of counsel, it's just the denial of counsel showed bias. It was the substance of the pleadings and the statements that were made by the judge about the case. Are you referring to her statement that the crime was brutal? I'm referring to the statement that this was a simple, straightforward case, which it went through and sort of quickly talked about the evidence. Again, a very surprising bit of knowledge for a judge to know at that very early proceeding. He had just been arrested, he had just been charged with crime, and they were still gathering the records when this request was made. But wouldn't that have to be the basis for determining that two counsel is not necessary? You'd have to make an assessment of the case. You would, and here that assessment was made by the attorney general acting on the judge's behalf. I agree there would be some, but when you look at the assessment that's made of this case, it supports second counsel, too. If you look at the allegations, or however you want to characterize them, of his life and the family and what he was subjected to growing up, and all the other children in the family and his mother, and with all the pressures of handling a death penalty case, it seems to me that any reasonable judge would say, yeah, you're entitled to another person to help you. This is a huge history here. The prosecutor's got a whole array of people in their staff. The attorney general has got a lot of folks up there, and you're going to need some help on this. And why, just as a matter of whatever the standard is, just as a matter of decency and understanding what the lawyer is going through with all this responsibility that rests on this lawyer's shoulder, even if you thought that it was a simple case, you would, I think, be hard-pressed to deny the appointment of second counsel. It's not that much of an expenditure, and you spend a lot more money on appeals and all the rest of it. It's just hard for me to conceive in a death penalty case that involves all this background and history of a defendant's life where the judge wouldn't want to have another attorney in there assisting, but I don't know. And I've never seen a case like this before. I haven't either, Your Honor, and you are exactly right. The response that the judge's counsel... And the Arizona court went out of its way to chastise this judge. As far as I'm concerned, I don't know. Yes. Did the court say that the judge had behaved unethically? I didn't see that in the opinion. No. The court did not say that, but the court did say, you have no right to appear here. The entity that was supposed to respond, if a response was required at all, was the county attorney's office, and the county attorney's office specifically chose not to respond because they said, we have no position and can take no position on whether second counsel should be appointed. I thought the state rules required the judge to be named as a party in the special action. The judge had to be named, but the judge was not the respondent. The respondent was always the Maricopa County attorney's office, and that's where the error occurred here. And the court said the judge had no standing. I thought that was the decision, not that she had behaved improperly, but that she had no standing. So it was improper, they said, to assert this sort of a brief, but not that the judge had behaved unethically in any way. No, I'm sorry. I didn't mean to say that. I'm sorry. No, I didn't mean to imply they said that she, that, but they did say that her actions were improper, not that she had done anything unethical. That's right. Well, that's pretty close. It is because, again, as we've said, the content of that response was very aggressive, and the statements made in them shocking. What was so shocking? I mean, it said the crime was brutal, but as the district court pointed out, it didn't weigh in on guilt or innocence in that, as the district court says, well, yeah, the crime was brutal, and I take it you're not arguing that. We're not arguing that, Your Honor, but the ---- So what was shocking about it? I'm not understanding that. The attack on the counsel who had just been appointed to represent Mr. Hurls. It said that it was a simple case and that the person could handle it, right? So you're saying that her criticism, was there criticism of counsel? The judge also said more. What was the shocking remark? That the response threatened her livelihood. And then where is that? I'm sorry. I'm sorry, Your Honor. I'm going to have to ---- That's all right. I will find it. I will find it. I pulled up my ERs and thought I had it, and I had the public decision rather than the response to the special action, but I will find that. All right. And you're not saying there was an attack on the defendant or that she was threatening the defendant or making a brutal attack on a defendant, right? You're just saying that she made a remark or that the brief made a remark about counsel. So I guess I'm ---- It was more than just ---- Is that correct? No, Your Honor, in this sense. It was more than just a remark. The response threatened counsel who had just been appointed. Why don't we go on, because I wanted to see the exact language. So why don't you go on to your next point, and then you can respond in any rebuttal time you have. Yes. I need to ---- I am so sorry. I don't have that. Don't worry about it. We'll give you time. Okay. I will get that and show you. We don't have a trap door on the floor. Good. That's good. Again, what we are requesting here is simply the opportunity, and it is a small request, the opportunity to uncover just what went on in those ex parte communications. We have the attorney general saying, yes, I communicated with the judge, and then we have the judge saying, there was no contact, or I made no contact. I actually can show you those. If you look at ER 179. Oh, I'm sorry, not 179, 79. I am so sorry. And compare that with ER 187. You will see that there is a discrepancy there. At ER 79, this is Judge Hilliard's order in which she says, no contact was made by this judge with the attorney general. And then you compare that with ER 187. And this is the attorney general's statement, undersigned counsel's communications with the trial judge during the special action proceedings, conceding that there were communications, and then going on to say, they cannot be construed to have been ex parte because undersigned counsel represented the trial judge at the time they occurred. It still doesn't go to my question about what difference it makes. So, I mean, even conceding that there was that language in the brief, it's like, all right. So how does that entitle you to relief? And you said you don't know. No, I'm sorry, Your Honor. I do know how it entitles us to relief, and I apologize if I did not make that clear. It was, as Judge Pregerson discussed earlier, he was entitled to a fair and impartial judge, and most specifically at the sentencing. And we have no idea if this was, she certainly did not appear to be a fair and impartial judge after those statements, but we don't know what happened during those communications, and we need discovery in order to show the prejudice. But we, our allegation is that she was not impartial. But if your theory is that any contact between the judge and the attorney general is per se an appearance of bias, or per se bias, then I'm not understanding, and I guess I'm repeating myself, I'm not understanding why there's a need for an evidentiary hearing, because we have all the facts before us now. Yeah, but we, you know, they're not supposed to talk to each other. If you're a judge, and you're in a trial, you're not supposed to be talking to an attorney on the other side without the other party knowing about it. That's right. The attorney general wasn't on the other side, though, right? That's improper, and it violates the ethics, and all the rest of it. You just don't do that. You're supposed to be a fair and impartial judge, and you just let the chips fall where they may. You make your ruling, you call your balls, you call your strikes, and then the jury makes the decision, or in this case, you make the decision, and you put your reasons down. And you'd be like a trial judge here calling up the attorney general of the United States in a federal criminal prosecution and talking about the case. You know, whatever they say. In Hurls v. Superior Court, I found it on page 4, they say, we come to the question, which sort of plea the responding judge has offered in this case. We conclude, they had described two various kinds, that it is the inappropriate, I-ruled-correctly sort. And that's where they chastise her, and that, you know, we talk about doing anything ethically wrong, that to me implies that she did do something ethically wrong. I agree, Your Honor, and thank you for finding that, E.R. Yes. There's so many in this case, I finally found it. And what was ethically wrong? No, I say, to me, when they say that that is the Superior Court v. Hurls on page, I have it on page 4, after describing the two kinds of appropriate, inappropriate, they say, we conclude that what she did is the inappropriate, post-I-rule-correctly sort. And that seems to me that they're saying she did something improper, and you could infer from that, that it was improper because she was not unbiased. She was showing her extreme bias, as a matter of fact. Well, I'm looking at footnote 4 in that case, which says, circumstances might arise in future cases, for instance, a judge attempting to respond to an allegation of ethical impropriety, in which the court may consider the propriety of response. In that case, a response might be appropriate. It says, our limited holding is that a response is inappropriate that merely seeks to advocate the correctness of a given ruling. So I guess my question to you is whether determining that it was improper, I guess it was, at that point, wasn't there case law that was, there was Fenton, and there was Dunn, and there was some confusion about the case law, and then the court is making a ruling as to when a judge may make a response in this sort of special action. Isn't that what the decision was, that the case law was unclear at the point when the judge submitted a response? Your Honor, that's right. That's what eventually the court, in its decision, holds. But at the outset, the court makes very clear that the proper respondent to the special action was the county attorney. It was not. And because the judge filed this motion, they then felt the need for the very first time to have to make it clear, judge, you can't do this. And they resolved a split in the case law or some ambiguity in the case law? Some ambiguity in the case law. Thank you. Thank you. May it please the court, counsel. My name is Kent Catani. I'm an assistant attorney general for the state of Arizona, representing the respondent in this matter. Judge Acuda is correct in suggesting that there is no additional information that could be developed which, if true, would entitle Mr. Hurrells to relief. The information that is being complained about was known at the time of the special action. He did not seek to recuse the judge at that time. He did not raise the issue on direct appeal. And there's simply no United States Supreme Court authority that suggests that Mr. Hurrells would be entitled to relief. In addition to the descriptions that we've provided of the cases from Caperton and Murchison and the other cases, Johnson, every one of those cases involved a situation where the defendant challenged. Let me ask you this. You have a trial judge, and you've got a case such as this, a criminal case. While the judge has got this case, and the attorney general is interested in this case, of course, do you think it's proper for the judge to have a unilateral conversation with the number one law enforcement officer in the state? Just answer that. Do you think that's proper? I think under the circumstances here, it's very different than what you're suggesting. Oh, just answer my question. Don't try to weasel away from it. Do you think that's proper? I don't think there was anything improper in this case. I didn't ask you that. Is there an appearance of impropriety? Let me say, I'm the trial judge, and this is a murder case. It's an important case to the state, right? That's right. Yeah. People run for office on the basis of murder convictions, don't they? Yes, they do. And then, I'm the presiding judge, and I've got something that's there that bothers me about this case, or whatever it is, and I call up the chief law enforcement officer of that state, and I have, forget about the contents and all that. We're not talking about even going out for a cup of coffee, I don't think they should do. But they did talk about this case. The case was mentioned. Do you think that's proper? They were talking about the- We don't know what they talked about. But do you think that's proper for a judge to call up the chief law enforcement trial judge and talk about a case, and the other side doesn't know about it? Is that proper? If you're talking about the case and you're talking to the trial prosecutor, that would be improper. I agree with that. What I'm suggesting here- Well, who's the chief law enforcement officer of the state? Who is the attorney general? Who oversees the whole business? Yes, what you're saying- The attorney general does, doesn't he? Yes, he does. Yeah, okay, so that's it. You don't do things like that. You don't do that kind of thing in America. You know, you've got to give people a fair trial, and you want to know something? When you give people a fair trial, the trials go very quickly. And most of the time, in the vast majority of occasions, they bring the result that the prosecutor wants. That's the way it works. And I don't disagree with that. No, you don't, because you're a wise man, and you're experienced. You know what goes on in the world. What I'm suggesting, however, is that there's not an entitlement to relief on federal collateral review. And it's important, again, to put this in context. At the time, and let me just start by saying, if this were to happen again, we obviously would approach things differently. The attorney general, it would go to a different section or to a different office if the presiding judge called. But here, the presiding judge, even Hurls 1, doesn't suggest that it would have been improper for the presiding judge. In theory, this could have been a defensive policy, the policy of we're not going to automatically appoint two attorneys absent some particularized showing. And the decision in Hurls 1, it upheld what the trial court did and said you haven't made any particularized showing. What counsel has suggested was exactly what was argued. Well, the public defender's office, other people are getting two attorneys, and I'm per se entitled to two attorneys. Hurls 1 doesn't say you're not going to get two attorneys. Hurls 1 just says the trial court hasn't made a blank denial. The trial court just said you need to make a particularized showing, and if you do that, you will very likely get two attorneys. Well, why do you think the second attorney was denied here? Because the judge thought this was an easy case, you know? You know, clear cut. I think it's because there was not a... Why are you wasting the county's money? And it turns out you're wasting a lot more of the county's money here. I think you have to make a particularized showing. Some of the points that have been raised in the briefing... Why do you think this was denied, second attorney? It was denied because there was no particularized showing. It's important to keep in mind that at the time we had judge sentencing... Where does the law say you need to make a particularized showing? Well, there's no United States Supreme Court authority that says you have to have two attorneys in a capital case. No, no. As a matter of Arizona law, are you required to make a particularized showing? Yes. Well, under Hurls 1 makes that clear. Hurls 1 upholds the decision of the trial court. No, no. Before Hurls 1 was there, did you have that particularized rule there? Well, Hurls 1 tells us what the law is. Yeah, but now isn't it customary? Isn't it the usual practice in Arizona where you've got a death penalty case coming up? I shouldn't ask a question. It is now, and the rule changed after this case. And at the time, the rule did not require two, but you could be appointed two if you made a particularized showing of a need for it. And, again, keep in mind there's a significant delay between trial and sentencing when you had judge sentencing. There was, in fact, a six-month delay. And so the points that are made in the brief, one of the attorneys should start working immediately on sentencing, was not applicable in Arizona at the time. There was plenty of time to start working on sentencing after the guilt phase had ended. So I think there's been, and I'd like to go back to this point of there's no United States Supreme Court authority that suggests that you can take your chances, roll the dice, and have a trial in front of a judge after you have information that leads you to believe that that judge is biased. If you don't file a motion to recuse that judge, you shouldn't be able to go through the trial, get a result, and then come back and say, I'd like to do this over again. I'd like to try a different judge. In every single one of the cases that are listed in the brief, Caperton, the money that was a campaign contribution to the appellate court judge, the defendant raised the issue before it went up on appeal in front of the judge that he claimed was biased. In Johnson, the judge was a defendant in a civil rights action. This was raised prior to trial. Liddickey, Murchison, Crater, every single one of those cases involves a challenge prior to trial. And so if, as you're suggesting, this is so patently obvious that there's bias, it would be patently unfair to let someone just go to trial without making any objection to this judge remaining on the case. Even, for example, in the Caperton case that involves campaign contributions, it's not clear from the United States Supreme Court how much of a contribution is going to be enough. They said, I believe the amount in Caperton was $3 million, and they said, we're not going to draw a line, but this one is just too much. Let me just ask you another question. You argue under Taylor that we must give edpa deference to the state court's denial of Mr. Hurl's judicial bias claim that he made. But why should we give deference to Judge Hilliard's adjudication of her own alleged bias? Why should that be entitled to any deference at all? Well, it's not just Judge Hilliard's determination. The case was referred to a different judge to assess whether Judge Hilliard should recuse herself in the second PCR. So Judge Ballinger looked at all of these facts, looked at all of this information, the blatant impropriety that's alleged occurred as part of this special action, and that's the determination that is certainly not tainted in any way by Judge Hilliard or by the Attorney General. That's an independent fact finder who looked at this and said, no, there's not a basis for removing Judge Hilliard. And if I could, another point, this is a very unusual case in that the county attorney did not file a response. Ordinarily, we have special actions all the time where, for example, a trial judge has denied, there's an evidentiary ruling and is going to keep evidence out. The defendant files a special action. The state comes in and files a response. And the mere fact that a response is filed in a special action seeking to uphold what the trial court has done doesn't establish any type of bias on the part of the trial judge. And this is an unusual fact pattern because the county chose not to weigh in. I think the county could have filed a response saying, although we don't take a position on whether a showing has been made in this case, we note that there has been no particularized showing. They're just saying there should be a per se rule that there are two attorneys. And I don't think that would have been improper for the county to have filed a response. No, they didn't do that, though. They didn't do that, though. And the county didn't file a response, which signals, certainly could be construed as a signal that the county agreed with that request. Right? I'm sure the county agreed with the response that was filed. But again, I go to you. My question to you, and I'm looking at the excerpt of record 79, where it appears that Judge Hilliard presided over Hurl's judicial bias claim, evaluating his claims of her alleged misconduct. Is that it? That's in the second post-conviction proceeding. And before she did that, she referred the case to Judge Ballinger to make a determination because they alleged the exact same allegations that Judge Hilliard should not preside over the second PCR. And that matter was referred to Judge Ballinger, a completely independent, a different judge who looked at the case and said, no, there's no basis for doing that. So rejected the very argument that's been made that Judge Hilliard was somehow unfair and is unfit to preside over that proceeding. But they're all on the same court, aren't they? Yes, but any time you file a motion, this is a particularized claim against Judge Hilliard. It's not against the entire bench. I wasn't implying anything. I just said they're all on the same court. Yes, they are. Okay. And again, the point that you've made about whether there's a need for further evidentiary development, the Attorney General, we have an open file policy. We've allowed counsel to come in and look at the entire file. There's simply nothing more that's going to be developed on this claim. And if you look at the Hurrell's reply brief in his second post-conviction to his second PCR. Was there a note kept to this conversation? There are no notes that I'm aware of that suggest that there's any type of dialogue with Assistant Attorney General Colleen French and Judge Hilliard. How do you explain that remark that opposing counsel was pointing to in the, I guess, in Ms. French's brief to the habeas court, to the district court, indicating or suggesting that there was some sort of contact? That's in the context of being accused of engaging in ex parte communications. And Ms. French filed a response saying, there can't be any ex parte communications. I was representing the judge. I don't know whether there was some minor phone call or something in terms of the procedure of what's, this is being filed. What's abundantly clear is there was no discussion. Judge Hilliard is on the record, as is Assistant Attorney General French, is saying Judge Hilliard had no input in the pleading that was filed. And it was simply, it was the allegation that was raised in this court that it was improper for the Attorney General to be here because it had engaged in ex parte communications with the trial court. And it was simply pointing out the Attorney General was not prosecuting the case. That was the county attorney. So there could not have been ex parte communications. And as I indicated, I would much prefer to be in a different posture. Were this to come up today, we'd have a different section. If the presiding judge were to call, we would in fact have someone at the Attorney General's office, a different section, represent the court. If they wanted to file a defensive policy argument, and we would screen ourselves off. Certainly we would do that. But it does not create, there's nothing here that creates a right to federal collateral review. And I think in fact you would be announcing a new rule that would violate Teague v. Lane if you were to say that you can wait until after trial, after sentencing, even though you know information about a judge that you find objectionable, that you can wait until after then to raise a challenge. I think that would be clearly, that's not something that follows from any of those cases, start from Caperton, Johnson, Murchison, or any of those cases. So I don't believe there's anything, and there are no facts, which if proven will entitle Mr. Hurls to relief on this claim. Well, you convinced me of one thing, that you ought to be the next Attorney General of Arizona. I don't think that will happen. I would like just briefly on the other claims that relate to the denial of ineffective assistance claims, just a point that's not necessarily raised in the brief. When Hurls argued in post-conviction that the trial court did not properly consider mitigation that was presented and did not consider the cumulative weight of the mitigation, these claims were presented to the same judge who had presided over the trial. And she didn't say, oh, yeah, I forgot. She denied the claim. She's clearly in the best position to know whether she did or did not do that. And if she had not considered the cumulative effect of the mitigation, she had that opportunity in post-conviction. And she's saying a different argument, this goes to the argument that they should have made a causal nexus, that the counsel should have elicited a causal nexus statement from one of the experts, or that the trial court should have considered the cumulative nature. That's presented to the court. The court doesn't say, oh, I don't have to consider the cumulative nature. The court just denies the claim. And it's clear that she did, in fact, consider the cumulative nature. And she points out that there's also been an independent, a thorough and independent review by the Arizona Supreme Court. And if there are no further questions, that's all I have. Good job. I know I've already used up my time, so I will be very brief. What we do all agree on, it now appears after listening to the Attorney General's argument, is that no one knows what happened during those conversations. No one knows what went on during those meetings. We know those meetings occurred, but we don't know what happened or the content. There is nothing in their files about them, and that shows that's not where the information is. The district court, by the way, the Attorney General mentioned diligence. The district court did not make any findings that this was not a diligent effort to uncover what had occurred in the communications. How do you respond to the point opposing counsel makes that if it's patently obvious that there is a bias or potential for bias because the judge was represented in the special action proceeding, that your client should have objected at that point before trial? My response to that is, given these facts, it's understandable why counsel didn't object. Again, we have to remember that during this special action, her livelihood was threatened. Did you find that? Pardon? Did you find that language? That's exactly what I was testifying, wasn't it? I believe yes. Thank you. I apologize for that, Your Honor. It is at ER 420. And what is stated is that if appointed counsel believes because of her caseload, personal competence, or otherwise that she is incapable of rendering competent representation of the petitioner, she is ethically bound to withdraw from this case and quite possibly to withdraw her name from the list of lawyers who contract to provide defense services on behalf of Maricopa County as well. Clearly, there are other attorneys who provide contract services for Maricopa County who would be able to provide competent representation in a case as simple as this. That's powerful language for the judge to use to the attorney who is requesting second counsel. What's that, ER 421? Excuse me, 420. 420, I'm sorry. 420, okay. There's no other questions. We, again, ask this court to either grant relief or, at the very least, remand for a hearing and discovery where we can uncover what went on between the attorney general and trial counsel. What's the bottom line that you're looking for here? A new sentencing, Your Honor. We believe that Mr. Hurls is entitled to a new sentencing proceeding before a clearly impartial judge. Well, actually, it would be now under, since Ring v. Arizona, it would be in front of a jury. And that's why this is a rare relief to be granted, because Arizona no longer has judge sentencing. Here, this was pure judge sentencing. Now, post-Ring, it is jury sentencing. So you just want a new sentencing process or proceeding that complies with present Arizona procedure? Yes, a fair sentencing, that's right, Your Honor, before a fair tribunal. Well, have you guys talked about this? Yes, we have. I would like one minute, maybe two. And I'm always willing to talk more. Okay. Thank you. If I could, Your Honor, one, just to respond to some of the new information. In terms of diligence, this information was part of the record. Counsel is suggesting that trial counsel did not want to make something of that, but Mr. Hurls was represented by someone else on direct appeal. That was part of the record. There's certainly no indication that appellate counsel looked at that and said, this is something that's so blatant that my client is entitled to a new trial. So there really hasn't been a showing of diligence. It didn't come up until the second post-conviction proceeding. In answer to your question, we're always willing to discuss. Well, you know, lawsuits, they grow, they change, they're amorphous. I mean, there's just not one. They do. The requested relief is a little bit odd, though, Your Honor, in terms of if this judge is biased, then the judge should not have sat on the trial. And I'm not sure I would see a principled distinction between saying the trial is okay and the sentencing is not okay. And I think that highlights that there really isn't a showing where we really haven't demonstrated that this judge was biased. There was at most an appearance. The two could be separate, can't they? I mean, you had... If this judge was so biased against him, then in theory he would be entitled to a... Well, but the... Wasn't there a jury that found him guilty? A jury found him guilty, yes. A jury found him guilty, so that takes the judge out of it. Certainly we see claims of judicial bias all the time where we have jurors sitting as back-binders. But a jury made that decision. So now what they're saying is that the defense counsel is saying that all we really want is to have a jury decide the penalty. And the evidence is all there. Right, and we're just suggesting that there's not enough of a basis to grant that type of relief under controlling United States Supreme Court authority. Well, let's look at the practical world. What would be wrong with that? Well, I think when looking at the practical world, I think the great injustice would be allowing someone to wait until they've gone all the way through to try to get two bites of the apple. Our system won't work if you don't raise an allegation. Our contemporaneous objection rule is important. And this is a great example of why you should. You may still... And here the judge expressed some frustration that she didn't have anything to do with this pleading. This was just something the presiding judge had foisted upon her, essentially. I don't think there's anything that suggests that she was unhappy with Mr. Hurrell's. If anything, she would be unhappy being put in the middle here where the presiding judge went to the attorney general and said, will you file what could be construed to be a defensive policy? I mean, I wasn't asking for a speech. Just think about it, that's all. All right. Thank you, Your Honor. Okay. All right, thanks. Very good argument on both sides. You're both very excellent, competent lawyers. It's been a pleasure having you here. I agree. And with that, we'll recess until tomorrow morning at... Eight. Eight. Thank you.
judges: Pregerson, Nelson D. W., Ikuta